**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LIWLIWA CABERTO, | Case No.: 2:18-cv-01034-APG-DJA |
| Plaintiff | **Order Granting Defendant's Motion for Summary Judgment** |
| v. | |
| STATE OF NEVADA ex rel. its DEPARTMENT OF HEALTH AND HUMAN SERVICES, PUBLIC AND BEHAVIORAL HEALTH, | [ECF No. 37] |
| Defendant | |

Plaintiff Liwliwa Caberto sues her employer, the State of Nevada's Department of Health and Human Services, alleging violations of the Americans with Disabilities Act (ADA), the Family and Medical Leave Act of 1993 (FMLA), and corresponding state law. The State moves for summary judgment on all of Caberto's claims. Because Caberto lacks evidence to show a dispute of material fact for any of her claims, I grant the State's motion.

I.     BACKGROUND

Caberto began working for the State in 2007 as a Psychiatric Nurse at the Southern Nevada Adult Mental Health Services (SNAMHS), part of Nevada's Department of Health and Human Services. SNAMHS operates a psychiatric hospital with a forensic unit in a separate building called Stein. In 2016, Caberto started working in the Utilization Management Department for SNAMHS, which supported the Stein facility.[1] About a year later, SNAMHS eliminated that department for budgetary reasons.[2] Caberto and 23 other employees were

---

[1] ECF No. 37-3 at 3.

[2] ECF No. 37-1 at 4.

notified that their positions were being eliminated and offered alternate assignments.  Caberto chose to be reassigned to Stein, where she remains employed today.[3]

Shortly before being reassigned, Caberto notified her employers that she would be seeking ADA accommodations for a back injury.  After receiving certification from Caberto's doctor, Caberto's superiors met with her and decided that she could perform the essential functions of her job with three accommodations: (1) assistance with lifting if needed, (2) minimal bending and squatting, and (3) use of an ergonomic mouse and chair.[4]  Stein had ordered ten ergonomic chairs for the staff after an ergonomic study the previous month, so when Caberto began working for Stein in August 2017, she did not receive a chair unique to her needs.[5]

In October, Caberto emailed her superiors to follow up about the chair she had been approved for, mentioning that the chairs already in the office were too low.[6]  After returning from approved FMLA leave in January 2018, Caberto sent another email requesting a different ergonomic chair.[7]  At that point, she was asked to select a chair and it was delivered later that month.[8]  Around the same time, Caberto sent an email asking for another ergonomic chair so she would not have to move her chair when asked to work in a different part of the building.[9] Caberto made no formal request for additional ADA accommodations.[10]

---

[3] ECF No. 37-4 at 2.

[4] ECF No. 37-5.

[5] ECF No. 37-1 at 4.

[6] ECF No. 40-1 at 4.

[7] ECF No. 37-6 at 2.

[8] ECF No. 37-1 at 5.

[9] ECF No. 37-6 at 3.

[10] ECF No. 37-3 at 7.

Caberto requested and was approved to take intermittent FMLA leave in 2017, 2018, and 2019.[11]  Over the years, she has used several hundred hours of paid and unpaid FMLA leave.[12]  She complained once in August 2018 that three hours she requested were not approved, but her time sheet from the day in question shows that her leave was actually approved.[13]

After filing a charge of discrimination with the Nevada Equal Rights Commission (NERC), Caberto sued the State alleging two causes of action: disability discrimination in violation of the ADA and disability discrimination in violation of Nevada Revised Statutes § 613.330.[14]  She amended her complaint after I denied the State's motion to dismiss to add two claims for FMLA violations.[15]  Caberto seeks only injunctive relief in the form of "an Order granting or restoring to Plaintiff the rights to which she is entitled."[16]

## II.    ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17]  When considering summary judgment, the court views all facts and draws all

---

[11] *Id.* at 7; ECF No. 37-1 at 5.

[12] ECF No. 37-1 at 5.

[13] *Id.*; ECF No. 37-7.

[14] ECF No. 1.

[15] ECF No. 24.

[16] *Id.* at 9.

[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

1    inferences in the light most favorable to the nonmoving party.[18]  If reasonable minds could differ

2    on material facts, summary judgment is not appropriate and the case must proceed to trial.[19]

3          If the moving party demonstrates the absence of any genuine issue of material fact, the

4    burden shifts to the party resisting summary judgment to "set forth specific facts showing that

5    there is a genuine issue for trial."[20]  "To defeat summary judgment, the nonmoving party must

6    produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[21]

7    **B.**    **Caberto's ADA Claims**

8          Title I of the ADA prohibits public and private employers from discriminating against

9    qualified individuals with disabilities.[22]  The ADA contemplates two types of discrimination:

10   disparate treatment and failure to accommodate.[23]  Caberto's ADA claim is premised on two

11   allegedly discriminatory actions: first, her reassignment to Stein, a disparate-treatment theory;

12   and, second, the issues with her ergonomic chair, a failure to accommodate theory.[24]

13         ADA claims are subject to the burden-shifting analysis from *McDonnell Douglas Corp.*

14   *v. Green*[25] and its progeny.[26]  This analysis follows a three-step process, the first of which

---

15   [18] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

16   [19] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n
17   v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

     [20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

18   [21] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

19   [22] *Bass v. Cty. of Butte*, 458 F.3d 978, 980 (9th Cir. 2006).

     [23] *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004).

20   [24] In her opposition, Caberto refers to her voluntary demotion, but she clarified at the motion to
21   dismiss stage that her ADA claim is based on her reassignment and not her voluntary demotion,
     which she did not include in her charge of discrimination with NERC.  I therefore do not
22   consider her arguments that the voluntary demotion was discriminatory.

     [25] 411 U.S. 792, 802 (1973).

23   [26] *See Diaz v. Eagle Produce Ltd P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v. Salem-
     Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004).

requires the plaintiff to establish a prima facie case of discrimination.[27]  "Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee."[28]  If the plaintiff presents a prima facie case, "the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for" an adverse employment action.[29]  If the defendant meets that burden, "any presumption that the defendant discriminated 'drops from the case,' and the plaintiff must then show that the defendant's alleged reason for [the employment action] was merely a pretext for discrimination."[30]  To the extent that Caberto's claim is also based on Nevada Revised Statutes § 613.330 et seq., the same analysis applies, so I will not address that claim separately.[31]

### 1.    Disparate Treatment

Caberto fails to establish a prima facie case for discrimination related to her reassignment to Stein.  To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.[32]  Caberto's claim fails on the third element.  She offers no evidence to support her contention that, even if the reassignment was an adverse employment action, she was reassigned because of her disability.  The State, meanwhile, has shown that the reassignment occurred because Caberto's department

---

[27] *McDonnel Douglas*, 411 U.S. at 802.

[28] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

[29] *Bodentt v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).

[30] *Id.*

[31] *Littlefield v. Nevada ex rel. Dep't of Public Safety*, 195 F. Supp. 3d 1147, 1152 (D. Nev. 2016) ("Nevada courts apply the ADA approach to plaintiff's state law claims.").

[32] *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

1   was eliminated for budgetary reasons and Caberto selected the Stein assignment.[33]  And even if

2   Caberto had shown a prima facie case for discrimination, she presents no evidence that the

3   State's legitimate, non-discriminatory reason for her reassignment was pretext for discrimination.

4   To the extent that Caberto's ADA claim is premised on her reassignment to Stein, I grant

5   summary judgment in the State's favor.

6                   **2.      Failure to Accommodate**

7           "[T]he ADA says that 'discrimination' includes an employer's 'not making reasonable

8   accommodations to the known physical or mental limitations of an otherwise qualified . . .

9   employee unless [the employer] can demonstrate that the accommodation would impose an

10  undue hardship on the operation of its business."[34]  "[O]nce the employee requests an

11  accommodation . . . the employer must engage in an interactive process with the employee to

12  determine the appropriate reasonable accommodation."[35]  But "there exists no stand-alone claim

13  for failing to engage in the interactive process.  Rather, discrimination results from denying an

14  available and reasonable accommodation."[36]  A prima facie claim of failure to accommodate has

15  the same elements as other theories of ADA discrimination.[37]

16          There is no genuine dispute that the State engaged in the interactive process with

17  Caberto.  Caberto met with two superiors to discuss her accommodation request and they

18  decided on three accommodations, including an ergonomic mouse and chair for computer

19

20  _____

    [33] ECF Nos. 37-1 at 4, 37-4 at 2.

21  [34] *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal
    quotations and citations omitted).

22  [35] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

23  [36] *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

    [37] *See Samper*, 675 F.3d at 1237.

                                    6

work.[38]  While it is unclear from the parties' evidence how long it took for Caberto to be accommodated, the parties agree that Caberto received an ergonomic chair.  A delay in fulfilling an accommodation does not amount to discrimination absent evidence that the delay was the result of anything other than negligence.[39]  Nothing in the record indicates that the State's delay was intentional.  Rather, it appears that a series of miscommunications caused the delay.  The State had purchased ten ergonomic chairs for Stein before Caberto's accommodations were approved and Caberto was given one of those chairs when she started there.[40]  Caberto emailed her superiors two months later to say the chair was not working.[41]  She was then on FMLA leave from November 2017 until January 2018.  She reminded her superiors about her accommodation when she returned to work, at which time she was allowed to pick out her own ergonomic chair.[42]  Caberto points to nothing in this chain of events that suggests the delay in giving Caberto her own ergonomic chair was intentional.  Caberto's claim for failure to accommodate therefore fails.

And even if there were some failure to accommodate because of the delay, Caberto's claim still fails because she has not shown an adverse employment action resulting from the delay.  For an act to be considered an "adverse employment action," it must "materially" affect the compensation, terms, conditions, or privileges of the plaintiff's employment.[43]  Typical examples include "hiring, firing, failing to promote, reassignment with significantly different

---

[38] ECF No. 37-5 at 2.

[39] *Mulligan v. Lipnic*, 734 Fed. Appx. 397, 400 (9th Cir. 2018) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

[40] ECF No. 37-1 at 4.

[41] ECF No. 40-1 at 4.

[42] ECF Nos. 37-1 at 4–5, 37-6 at 2–3.

[43] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

responsibilities, or a decision causing significant change in benefits."[44]  Caberto does not allege any such action resulted from the delay in receiving her chair, so she fails to establish a prima facie case for failure-to-accommodate discrimination.

Caberto also contends that the fact that she was given only one chair despite having to float between departments amounts to discrimination.  But again, she fails to present evidence of any adverse employment action resulting from her having only one chair.

Caberto has therefore failed to show that her accommodation request was not granted.  So to the extent that her ADA discrimination claim is premised on a failure to accommodate, I grant summary judgment in the State's favor.

## C.   Caberto's FMLA Claims

In her amended complaint, Caberto brings two claims for violations of the FMLA.  First, she alleges that she was "denied her right to use her FMLA leave multiple times from June 2016 to September 2018," which is an FMLA interference claim.[45]  Second, she alleges that, since complaining about her FMLA leave being denied, she has "suffered increasing hostile and discriminatory behavior" from the State and its agents, an FMLA retaliation claim.[46]  The State argues that it is entitled to summary judgment on both of Caberto's FMLA claims because Caberto has no evidence that her FMLA leave requests were ever denied or that she has engaged in any protected activity that would give rise to a retaliation claim.

The FMLA "makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of' rights granted by it, and violators are subject to consequential damages and

---

[44] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[45] ECF No. 24 at 8.

[46] *Id.*

appropriate equitable relief."[47]  An employer interferes with an employee's rights under the FMLA by refusing to authorize FMLA leave.[48]  The State argues that Caberto has not identified any specific denial of FMLA leave.  While Caberto alleges in the background section of her opposition that her FMLA requests in July and August 2018 were denied, she points to no evidence supporting this statement and her response is otherwise silent on this issue.  The State, on the other hand, has shown that Caberto's requests were granted.[49]  Caberto bears the burden of proof on this claim, and without disputing this evidence she cannot overcome the State's motion for summary judgment.

Caberto's response is similarly silent about FMLA retaliation.  To prevail on an FMLA retaliation claim, an employee must show that she was punished for opposing employer practices made unlawful by the FMLA.[50]  The State argues that Caberto has identified neither opposition to its actions nor retaliatory punishment.  Caberto offers no response.  There is evidence in the record that Caberto complained that she was denied three hours of leave on August 2, 2018, but there is no evidence that she was retaliated against for making this complaint.  Therefore no dispute of material fact remains and I grant the State's motion as to this claim.

## III.    CONCLUSION

I THEREFORE ORDER that the State's motion for summary judgment **[ECF No. 37] is GRANTED.**

/ / / /

/ / / /

---

[47] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86–87 (2002) (citing U.S.C. §§ 2615(a)(1), 2617(a)(1)).

[48] *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003) (citing 29 C.F.R. § 825.220).

[49] ECF Nos. 37-1 at 5, 37-7 at 2.

[50] *Xin Lui*, 347 F.3d at 1137.

I FURTHER ORDER the Clerk of Court to enter judgment in favor of the defendant and against the plaintiff and close this case.

DATED this 8th day of September, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE